## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

Carmen M. Ocasio Hernández, Gerardo Pizarro Pizarro, Jorge L. Rodríguez Figueroa, Ángel L. Figueroa Rolón, Héctor G. Guerrero Frau, Diana D. Rodríguez Vicente, Nydia Díaz Francisco, Carlos Santos Rivera, Juan Carrasquillo López, Iván Rivera Canales, Felicita Rivera Báez, William Burgos Castellanos, Víctor M. Camacho Pizarro and Ángel Báez Torres, all ironing, sewing, laundry, cleaning, conservation and maintenance employees of the Governors' Mansions, their respective spouses, and the Conjugal Partnerships Comprised by them;

**PLAINTIFFS,**

v.

LUIS FORTUÑO BURSET, In His Personal Capacity And As Governor Of The Commonwealth Of Puerto Rico, LUCE VELA in her individual and official capacity as First Lady, and the Conjugal partnership formed by them; VELMARIE BERLENGERI MARÍN, in her individual and official capacity as Administrator of the Governor's Mansion, and her husband Juan Doe, and the Conjugal partnership formed by them; JUAN CARLOS BLANCO, in his individual and official capacity as Chief if Staff, and Juanita Doe, and the Conjugal partnership formed by them,

**DEFENDANTS**

**CIVIL NO. 09-1299 (GAG)**

**Civil Rights Violations**

**Jury Trial Requested**

## FIRST AMENDED COMPLAINT

**COME NOW** the plaintiffs, through the undersigned attorneys, and respectfully state,

1

allege and pray as follows:

## I. JURISDICTIONAL STATEMENT

1.     This is a civil action filed by fourteen (14) employees of the Governor's Mansion ("La Fortaleza"), all maintenance or domestic workers engaged in laundry, ironing, sewing and cleaning functions, that following the general elections of November 2008, were summarily dismissed and replaced without cause by the newly elected Governor of Puerto Rico, Luis F. Fortuño Burset, in concert with the other defendants, simply because they were members of the Popular Democratic Party. All the plaintiffs allege a violation of the first amendment, due process and equal protection clause of the Constitution of the United States, as well as under the laws and Constitution of Puerto Rico, and pray equitable relief in the form of reinstatement, and legal relief in the form of economic and punitive damages, pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1983. As this is a civil action brought pursuant to the laws and Constitution of the United States, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over all claims arising under of the laws and Constitution of Puerto Rico pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(b).

## II. THE PARTIES

2.     The plaintiffs are:

a.   Gerardo Pizarro Pizarro, maintenance employee.

b.   Jorge L. Rodriguez Figueroa, maintenance employee.

c.   Angel L. Figueroa Rolón, warehouse employee.

d.   Hector G. Guerrero, maintenance employee.

e.   Diana D. Rodriguez Vicente, laundry and ironing employee.

    f.   Nydia Diaz Francisco, seamstress and ironing employee.

    g.   Carlos Santos Rivera, maintenance employee.

    h.   Juan Carrasquillo Lopez, maintenance employee.

    i.   Ivan Rivera Canales, maintenance employee.

    j.   Carmen M. Ocasio Hernández, cleaning employee.

    k.   Felicita Rivera Baez, laundry and ironing employee.

    l.   William Burgos Castellano, maintenance employee.

    m.  Victor M. Camacho Pizarro, maintenance employee.

    n.   Angel L. Baez Torres, cleaning employee.

3.     Each and all plaintiffs are members of the Popular Democratic Party (hereinafter "PDP") or are believed to be a member of the PDP.

4.     Prior to the 2008 General Election each and all plaintiffs were employed at the Governor's Mansion as public employees that performed maintenance or housekeeping functions.

5.     None of the plaintiffs performed public policy functions.

6.     None of the plaintiffs performed functions of close propinquity to policy making employees or otherwise had access to confidential information concerning public policy making.

7.     The defendants, nor their agents, employees and representatives evaluated the job performance of any of the plaintiffs prior to terminating their employment.

8.     The plaintiffs are humble, working class Puerto Rican men and women that were terminated and left without a job, for the sole reason that they did not belong to the political party of the new Governor of Puerto Rico.

9.     By information and belief all plaintiffs were replaced by new employees affiliated with the new Progressive Party.

10.     The spouses of the plaintiffs, and their respective conjugal partnerships, join this complaint as to all causes of action arising under the laws and Constitution of Puerto Rico.

11.     Defendant Luis Fortuño Burset was elected Governor of Puerto Rico in the 2008 general elections and assumed the Office of the Governor on or about January 2, 2009. He is the nominating authority at the Governor's Mansion and approves or disapproves of all personnel decisions, including the personnel decisions concerning the termination of each plaintiff. He is sued in his individual and official capacities for legal and equitable relief. He is the president of the New Progressive Party (hereinafter "NPP").

12.     Defendant Luce Vela is the wife and First Lady of defendant Fortuño.  By information and belief, she participated in the decision to terminate the employment of the plaintiffs. She is sued in both her individual and official capacities for equitable and legal relief. She is a member of the New Progressive Party.

13.     Defendant Velmarie Berlengeri Marin was named Administrator of the Governor's Mansion by defendant Luis Fortuño. She participated in the decisions of Governor Fortuño Burset to terminate the employment of each plaintiff.She is sued in both her individual and official capacities for equitable and legal relief. She is a member of the new progressive party. She is married to defendant Juan Doe, which together with their Conjugal Partnership respond under state law.

14.     Defendant Juan Carlos Blanco was named Chief of Staff at the Executive Mansion by defendant Luis Fortuño. He participated in the decisions of Governor Fortuño Burset and other defendants to terminate the employment of each plaintiff. He is sued in both his

4

individual and official capacities for equitable and legal relief. He is a member of the New Progressive Party. He is married to defendant Juanita Doe, which together with their Conjugal Partnership respond under state law.

### III. STATEMENT OF THE FACTS

#### General to all plaintiffs

15.   Defendants all belong to the NPP, the political party which assumed the direction of the Puerto Rico Government, including the Governor's Mansion, on January, 2009. Defendants' knowledge that plaintiffs were associated to a political party different to the NPP is evidenced from certain facts which, considered either by themselves or in combination, are clear proof thereof. Such facts include, but are not limited to, the following:

 a. Plaintiffs were terminated from employment less than sixty (60) days after defendants assumed administration and control of the Governor's Mansion, a period so brief that it indicates that defendants were motivated by their knowledge of plaintiffs' political associations and by discriminatory animus;

 b. Each and all plaintiffs were dismissed by termination letters that fail to state any reason whatsoever for the dismissal, a fact that indicates that the defendants did not engage in any examination of plaintiffs' performance, abilities or functions and were motivated instead by animus towards the plaintiffs' political associations;

 c. Plaintiffs were immediately substituted in their positions as maintenance and domestic employees, a fact that evidences that their maintenance and domestic functions were still necessary to conserve, maintain and run the Governor's Mansion, and that their termination was not in consecution of fiscal or

reorganization concerns. This constitutes proof that defendants, in terminating plaintiffs, were motivated instead by animus towards the plaintiffs' political associations;

d.  Plaintiffs were substituted in their positions by members of the NPP, a fact that evidences that defendants wanted to have NPP affiliates in the positions that plaintiffs formerly occupied, thus proving that plaintiffs were terminated because they belong to a party different from that which now holds the executive office;

e.  The political discrimination perpetrated against plaintiffs in terminating their employment was so obvious that there are incidents, to which individual plaintiffs can attest to, establishing that the new employees that came as substitutes were obviously known NPP'ers, and that the decision to terminate was made in hasty and concerted fashion by the defendants to accommodate NPP members to the Governor Mansion's positions previously held by plaintiffs. Among these incidents, it can be mentioned that logos and flyers allusive to the NPP and Governor Fortuño were in full display and clear view to employees at the Governor's Mansion and obviously to defendants, who acquiesced to the presence of those logos and did nothing to ease the politically charged environment which ensued. In another incident, a dismissed employee went to the Governor's Mansion one working day after her dismissal to file some papers, and found then that there was a substitute employee already installed in her position, wearing the same uniform that she had worn just days before;

6

f.  An illustrative incident pertaining to the politically charged environment at the Governor's Mansion and defendants acquiescence to it is the following:

    i.  In early January 2009, defendant Velmarie Berlingeri, Administrator of the Governor's Mansion, met with several maintenance employees, including some of the plaintiffs. The purpose of the meeting was to present Mr. José Luis Rodríguez, an employee appointed by the new NPP administration, as a person "of her full trust", who was authorized to give instructions on Berlingeri's behalf as to conservation and maintenance duties at the Governor's Mansion, as well as to general services performed therein;

    ii.  Mr. José Luis Rodríguez thus started to give instructions on Berlingeri's behalf. In her interaction with some of the plaintiffs herein, he asked each of them as to how and when they began to work at the Governor's Mansion, so as to corroborate their political adherence. He carried a notebook with him, apparently to take notes on conversations and "facts";

    iii.  Rodríguez always had on the belt of his pants, very visible to all, a cellular phone with a blue and white cover with palm trees that, every time a call came in, ringed at the tune of the jingle song for Governor Fortuño ("Its time to change"). He also sang this song in a high and audible voice from time to time before the employees he commanded, and stated on several occasions that things had indeed changed. Also, on some areas frequented by Rodríguez, there were emblems and

7

political flyers allusive to Governor Fortuño and the NPP.

g. Several of the plaintiffs herein can attest to the fact that, at the relevant time, there were rumors regarding a list of employees considered as PDP's and Rosellistas who would be terminated and substituted with NPP'ers;

h. One of the plaintiffs specifically heard the first lady comment "we are going to clean up the kitchen" ("vamos a limpiar la cocina"), in evident reference to the employees that would be terminated because of their political adherence;

i. One of the laundress plaintiffs, in a visit to the Governor's Mansion laundry shortly after her dismissal, found it in total disarray, which clearly demonstrates that substitutes did not know how to adequately perform the relevant duties, and thus that their appointments were motivated not on better performance capabilities but rather on political considerations;

j. Several of the plaintiffs can attest to the fact that confidential clerical staff which was brought upon by the new NPP governmental administration insisted on interrogating them in order to ascertain their respective political affiliations;

k. Several of  the plaintiffs can attest to the fact that they were asked by defendants, including Governor Luis Fortuño Burset, as to the circumstances pertaining to how and when they got to work at Fortaleza, in an attempt to verify and corroborate plaintiffs' political affiliations, to discriminate on such basis in subsequent adverse employment actions;

l. Defendant Fortuño stated, in answering to press questions about possible government employment terminations, that "none of them voted for him," a

fact which evidences that defendant Fortuño considered political behaviors and associations, such as for whom a person voted in the past election, as a criteria for the taking of employment decisions at the Governor's Mansion specifically and in the Executive branch in general;

m. Defendant Blanco, in answering to press questions about the Fortaleza employment terminations, stated that these employees were terminated because they were privy to confidential sensitive information. This assertion by Blanco is false; a fact which can be easily ascertained by examining plaintiffs' duties in their personnel files (available to defendants at all times). The fact that Blanco was clearly not truthful as to the motivation for the terminations and as to the nature of the employment held by the terminated employees clearly establishes that he was making a pretextual colloquy to hide the true motivation for the dismissals, which was discriminatory political animus;

n. In the same comments to the press, Blanco stated that at least some of the terminated employees would be substituted, a fact that clearly shows that plaintiffs' work was necessary and that the termination was not motivated by fiscal or reorganization concerns;

o. Although in the answer to the complaint defendants admit that they had never evaluated plaintiffs prior to their dismissals, defendant Blanco, in his public statements to the press pertaining to the dismissals specifically stated that "We are making employment evaluations every month". The fact that defendants have contradicted themselves on the assertion that no evaluations prior to the

9

dismissals were done evidences that the explanations given for the dismissals are not truthful, and thus constitutes proof that a pretextual explanation is given to hide the fact that adverse employment action was taken against plaintiffs because of their political affiliation to a party different than the NPP;

p. Defendant Blanco made disparaging remarks against the prior PDP administration and stated that employees that had been fired at the Governor's Mansion where part of said PDP administration.  This occurred when a group of dismissed employees were protesting at the Governor's Mansion entrance that their employment liquidation process was being purposely interfered with by defendants.  The fact that Blanco readily made disparaging comments about the prior governmental administration while addressing criticism by terminated employees is proof that the decision to terminate was motivated by political animus, thus establishing that Blanco, along with the other defendants, knew that the Fortaleza employees which were terminated, including the plaintiffs, belonged to a party different from the NPP;

q. The Law for the Conservation and Maintenance of la Fortaleza, 3 L.P.R.A. §18d, provides that the First Lady shall direct a Committee, also comprised by the La Fortaleza Administrator (defendant Velmarie Berlengeri), that oversees all conservation and maintenance work performed by the plaintiffs and their replacements at la Fortaleza. As part of those functions, the defendants Vela and Berlengeri were consulted and participated in the dismissal and hiring decisions concerning maintenance and domestic employees at the Governor's Mansion. This constitutes proof that Vela and Berlengeri, along with the other

10

defendants, participated in the employment termination decision concerning the plaintiffs and that said decision was premised on defendants knowledge that plaintiffs belonged to a party different from the NPP;

r.   In the organigram submitted to the Transition Committee, the First Lady oversees the Governor's Mansion; and as such, in concert with the other defendants, participated in the decisions to dismiss the plaintiffs because of their associations to a political party other than the NPP; and participated in the decision to hire new maintenance and domestic employees because of their political associations to the political party of the defendants Governor Fortuño and First Lady Vela;

s.   As part of her functions as Chair of the Conservation and Maintenance of La Fortaleza Committee the First Lady commented in the press of Puerto Rico that she had specifically overseen the repairs and refurbishing of certain part of La Fortaleza; thereby confirming that she exercised supervisory authority over the maintenance and domestic employees employed at the Governor's Mansion, which constitutes proof that she participated in the decision to dismiss plaintiffs due to political animus and hired their replacements because of their associations to the NPP;

t.   There is a Classification Plan at La Fortaleza that considers conservation and maintenance employees (i.e., "trabajador de conservación", "trabajador de mantenimiento", among others) career positions and subjects appointment to such positions to merit system recruitment; which defendant Fortuño and the other defendants ordered to be ignored and not applied to the plaintiffs.

11

Defendants willful disregard of the opportunity to place plaintiffs in career positions under the Classification for the purpose of substituting them with NPP affiliates is proof that the defendants knew that plaintiffs belonged to a party different from the NPP and that adverse employment action was taken against them because of their political affiliation;

u.  Defendant Luce Vela addressed some of the plaintiffs during the execution of their duties at La Fortaleza, making disparaging comments regarding the past PDP administration, creating anxiety and fear in them.  At least on one occasion, the derogatory comments were followed with an indication that "changes had come".  These comments and the context in which they were made are proof that defendants were seeking to change everything that they perceived as belonging to the past administration, thus evidencing that she, along with the other defendants, participated in the decision to terminate plaintiffs because they belonged to a party different from that which now holds the executive office;

v.  After senator Bhatia,  from the PDP party, insisted publicly that defendants reveal the salaries of the Governor's Special Advisors, it was asserted that said salaries had been significantly augmented after the change of governmental administration, a fact that evidences that any allegation of budgetary concerns or economies at the Governor's Mansion is just a pretext to hide employment decisions taken on the basis of political animus, concocted to hide the fact that plaintiffs were in truth terminated by defendants because they belonged to a party different from that which now

12

holds the executive office;

w. Defendant Berlengeri signed the termination letters of all of the plaintiffs. Although defendant governor Fortuño is the proper nominating authority, he conferred on Berlengeri, through Executive Order, the authorization to sign on his behalf, as part of a concerted plan to terminate members of the PDP and replace them with members of the NPP under Fortuño's instructions and under the advice, input and participation of defendants Blanco, Vela and Berlengeri. The fact that the Governor issued this Executive Order upon entering office and that Berlengeri acted on it immediately to terminate numerous employees that did not perform sensitive duties nor implemented or made policy, including plaintiffs, is proof of discriminatory political motivation by all defendants, including the Governor, pertaining to the personnel decisions that were taken;

x. Defendant Berlengeri made disparaging remarks against the prior PDP administration and alluded to the fact that those that had been fired where part of said administration. The fact that Berlengeri readily made disparaging comments about the prior governmental administration while addressing criticism by terminated employees is proof that the decision to terminate was motivated by political animus, and that Berlengeri, along with the other defendants, knew that the Fortaleza employees which were terminated, including the plaintiffs, belonged to a party different from the NPP and acted upon said knowledge to purposely discriminate against them;

y. Plaintiffs attest to the fact that, at the Governor's Mansion, the environment

was politically charged, and that it was known internally to which party co-workers belonged to. This knowledge was commonly shared and discussed between employees, including NPP employees that, after the change of governmental administration remained in their positions or came to occupy high level trust positions as per designation by the defendants, employees that were consulted by the defendants in the adverse employment decision making process.

**Plaintiff Gerardo Pizarro Pizarro**

16.    Gerardo Pizarro Pizarro ("Pizarro") is of legal age, resident of Puerto Rico and a citizen of the united Status of America. He is married to plaintiff Leticia Matos Santiago, and together they form a Conjugal Partnership.

17.    Plaintiff Pizarro commenced working at the Governor's mansion in 1999 as Cleaning Employee ("Encargado de Limpieza") in the Maintenance Department of the Governor's mansion.

18.    Plaintiff's principal duties were to sweep, mop, dry and clean furniture, tables, paintings, lamps, rugs, mirrors and doors at the Executive Mansion; and set up and dismantle activities held at the Governor's Mansion at La Fortaleza, Fajardo and Cayey.

19.    Plaintiff engaged in cleaning functions of a routine nature, that required manual competence and efficient performance, not political affiliation.

20.    Defendants terminated and dismissed plaintiff from his job without even conducting a single evaluation as to his job performance and efficiency.

21.    At no time prior to his dismissal did the Defendants discipline plaintiff or issue a reprimand related to the performance of his duties.

14

22.    Defendants terminated plaintiff's employment, without prior warning and without cause, by a letter of February 27, 2009, that informed him that he would be terminated on that same day.

23.    As of this date, defendants have not even paid the plaintiffs his accrued income, vacations and sick pay.

24.    The reason that plaintiffs' job was terminated was because the defendants knew or assumed that he belonged to the Popular Democratic Party and/or was not a known member of the New Progressive Party.

25.    As a result of this termination, Defendants have deprived plaintiff, his wife and their conjugal partnership of the income by which he sustained himself and his family; have subjected them to personal pain and suffering; and have punished him in the exercise of civil rights by terminating his employment because he is not a member of political party of the new Governor of Puerto Rico.

**Plaintiff Jorge L. Rodriguez Figueroa**

26.    Plaintiff Jorge Rodriguez Figueroa ("Rodriguez") is of legal age, resident of Puerto Rico and a citizen of the United States of America.

27.    Plaintiff Rodriguez commenced working at the Governor's Mansion on September 1, 1988 as Cleaning Employee ("Encargado de Limpieza") in the Maintenance Department of the Governor's mansion.

28.    Plaintiff's principal duties were to sweep, mop, dry and clean furniture, tables, paintings, lamps, rugs, mirrors and doors at the Executive Mansion; and set up and dismantle activities held at the Governor's Mansion at La Fortaleza, Fajardo and Cayey.

29.    Plaintiff engaged in cleaning functions of a routine nature, that required manual

15

competence and efficient performance, not political affiliation.

30.   Defendants terminated and dismissed plaintiff from his job without even conducting a single evaluation as to his job performance and efficiency.

31.   At no time prior to his dismissal did the Defendants discipline plaintiff or issue a reprimand related to the performance of his duties.

32.   Defendants terminated plaintiff's employment, without prior warning and without cause, by a letter of March 11, 2009, that informed him that he would be terminated on that same day.

33.   As of this date, defendants have not even paid the plaintiffs his accrued income, vacations and sick pay.

34.   The reason that plaintiffs' job was terminated was because the defendants knew or assumed that he belonged to the Popular Democratic Party and/or was not a known member of the New Progressive Party.

35.   As a result of this termination, Defendants have deprived plaintiff of the income by which he sustained himself and his family; have subjected him to personal pain and suffering; and have punished him in the exercise of civil rights by terminating his employment because he is not a member of political party of the new Governor of Puerto Rico.

### Plaintiff Angel L. Figueroa Rolón

36.   Plaintiff Angel Figueroa Rolón ("Figueroa") is of legal age, resident of Puerto Rico and a citizen of the United States of America. He is married to plaintiff Aracelis De Jesus Rodriguez, and together they form a Conjugal Partnership.

37.   Plaintiff Figueroa commenced working at the Governor's Mansion on June 16, 2000 earning $1,497 monthly as Administrative Employee in Charge of the Warehouse

16

("Encargado de Almacén") in the Governor's mansion.

38.     Plaintiff's principal duties were to receive, store and verify the merchandise incoming from different companies; fill the refrigerators in the kitchen of the daily foods, including the Governor's Houses in Fajardo and Cayey, when needed; and prepare and maintain the merchandise inventory.

39.     Plaintiff is engaged in warehouse functions of a routine nature whose quality depended on manual competence and efficient performance, not political affiliation.

40.     Defendants terminated plaintiff's job without even conducting a single prior evaluation as to his job performance and efficiency.

41.     At no time prior to his dismissal did the Defendants discipline plaintiff or issue a reprimand related to the performance of his duties.

42.     Defendants terminated plaintiff's employment in the most callous and cold manner, without prior warning, and without cause, by a letter of February 27, 2009 that informed him that he would be terminated on that same day.

43.     As of this date, defendants have not even paid the plaintiff his accrued income, vacations and sick pay.

44.     The only reason that plaintiff's job was terminated was because the defendants knew or assumed that insofar as he was named under prior administration, he belonged to the Popular Democratic Party and/or was not a known member of the New Progressive Party.

45.     As a result of this termination, plaintiff, along with his wife and their conjugal partnership, was deprived of the income by which he sustained himself and his family; has been subject to personal pain and suffering by the defendants; and has been punished in the exercise of civil rights for not belonging to the political party of the new Governor of Puerto Rico, which

17

now occupies the Governor's Mansion.

## Plaintiff Hector G. Guerrero Frau

46.     Plaintiff Hector Guerrero Frau ("Guerrero") is of legal age, resident of Puerto Rico and a citizen of the United States of America.

47.     Plaintiff Guerrero commenced working at the Governor's Mansion on or about 1999 as Cleaning Employee ("Encargado de Limpieza") in the Maintenance Department of the Governor's Mansion.

48.     Plaintiff's principal duties were to sweep, mop, dry and clean furniture, tables, paintings, lamps, rugs, mirrors and doors at the Executive Mansion; and wash and clean the toilets, basins, doors, walls, windows, stairs and floors at the Governor's Mansion.

49.     Plaintiff engaged in cleaning functions of a routine nature, that required manual competence and efficient performance, not political affiliation.

50.     Defendants terminated and dismissed plaintiff from his job without even conducting a single evaluation as to his job performance and efficiency.

51.     At no time prior to his dismissal did the Defendants discipline plaintiff or issue a reprimand related to the performance of his duties.

52.     Defendants terminated plaintiff's employment, without prior warning and without cause, by a letter of February 27, 2009, that informed him that he would be terminated on that same day.

53.     As of this date, defendants have not even paid the plaintiff his accrued income, vacations and sick pay.

54.     The reason that plaintiff's job was terminated was because the defendants knew or assumed that he belonged to the Popular Democratic Party and/or was not a known member of

the New Progressive Party.

55.     As a result of this termination, Defendants have deprived plaintiff of the income by which he sustained himself and his family; have subjected him to personal pain and suffering; and have punished him in the exercise of civil rights by terminating his employment because he is not a member of political party of the new Governor of Puerto Rico.

**Plaintiff Carlos Santos Rivera**

56.     Plaintiff Carlos Santos Rivera ("Santos") is of legal age, resident of Puerto Rico and a citizen of the United States of America. He is married to plaintiff Maria Flores Delgado, and together they form a Conjugal Partnership.

57.     Plaintiff Santos commenced working at the Governor's Mansion on or about 1999 as a Cleaning Employee ("Encargado de Limpieza") in the Maintenance Department of the Governor's Mansion.

58.     Plaintiff's principal duties were to sweep, mop, dry and clean furniture, tables, paintings, lamps, rugs, mirrors and doors at the Executive Mansion.

59.     Plaintiff engaged in cleaning functions of a routine nature, that required manual competence and efficient performance, not political affiliation.

60.     Defendants terminated and dismissed plaintiff from his job without even conducting a single evaluation as to his job performance and efficiency.

61.     At no time prior to his dismissal did the Defendants discipline plaintiff or issue a reprimand related to the performance of his duties.

62.     Defendants terminated plaintiff's employment, without prior warning and without cause, by letter of February 27, 2009, that informed him that he would be terminated on that same day.

63.     As of this date, defendants have not even paid the plaintiffs his accrued income, vacations and sick pay.

64.     The reason that plaintiffs' job was terminated was because the defendants knew or assumed that he belonged to the Popular Democratic Party and/or was not a known member of the New Progressive Party.

65.     As a result of this termination, Defendants have deprived plaintiff, along with his wife and their conjugal partnership, of the income by which he sustained himself and his family; have subjected them to personal pain and suffering; and have punished him in the exercise of civil rights by terminating his employment because he is not a member of political party of the new Governor of Puerto Rico.

**Plaintiff Angel L. Baez Torres**

66.     Plaintiff Angel Baez Torres ("Baez") is of legal age, resident of Puerto Rico and a citizen of the United States of America.

67.     Plaintiff Baez commenced working at the Governor's Mansion on September 1, 1988 as Cleaning Employee ("Encargado de Limpieza") in the Maintenance Department of the Governor's mansion.

68.     Plaintiff's principal duties were to sweep, mop, dry and clean furniture, tables, paintings, lamps, rugs, mirrors and doors at the Executive Mansion; and set up and dismantle activities held at the Governor's Mansion at La Fortaleza, Fajardo and Cayey.

69.     Plaintiff engaged in cleaning functions of a routine nature, that required manual competence and efficient performance, not political affiliation.

70.     Defendants terminated and dismissed plaintiff from his job without even conducting a single evaluation as to his job performance and efficiency.

20

71.     At no time prior to his dismissal did the Defendants discipline plaintiff or issue a reprimand related to the performance of his duties.

72.     Defendants terminated plaintiff's employment, without prior warning and without cause, by a letter of March 11, 2009, that informed him that he would be terminated on that same day.

73.     Defendants have required Baez, at his own expense, to file with them a Negative Certification of Debt from the CRIM, a Negative Certification of No Debt from the Treasury Department, a Certification of the Treasury Department as to filing of Income Tax, a Certification from AAELA as to no debt; a Certification of ASUME as to no debt; and a Certification of the Retirement System as to no debt, as a condition for paying him the salary, vacations and sick leave he has earned. In addition, plaintiff had to pay to get a copy of his personnel file. And yet, as of this date, defendants have not even paid the plaintiff his accrued income, vacations and sick pay.

74.     The reason that plaintiff's job was terminated was because the defendants knew or assumed that he belonged to the Popular Democratic Party and/or was not a known member of the New Progressive Party.

75.     As a result of this termination, Defendants have deprived plaintiff of the income by which he sustained himself and his family; have subjected him to personal pain and suffering; and have punished him in the exercise of civil rights by terminating his employment because he is not a member of political party of the new Governor of Puerto Rico.

**Plaintiff Juan Carrasquillo Lopez**

76.     Plaintiff Juan Carrasquillo Lopez ("Carrasquillo") is of legal age, resident of Puerto Rico and a citizen of the United States of America. He is married to plaintiff Laura

21

Guzman Rosado, and together they form a Conjugal Partnership.

77.     Plaintiff's principal duties were to sweep, mop, dry and clean furniture, tables, paintings, lamps, rugs, mirrors and doors at the Executive Mansion; and set up and dismantle activities held at the Governor's Mansion at La Fortaleza, Fajardo and Cayey.

78.     Plaintiff engaged in cleaning functions of a routine nature, that required manual competence and efficient performance, not political affiliation.

79.     Defendants terminated and dismissed plaintiff from his job without even conducting a single evaluation as to his job performance and efficiency.

80.     At no time prior to his dismissal did the Defendants disciplined plaintiff or issued a reprimand related to the performance of his duties.

81.     Defendants terminated plaintiff's employment, without prior warning and without cause, by a letter of February 27, 2009, that informed him that he would be terminated on that same day.

82.     As of this date, defendants have not even paid the plaintiffs his accrued income, vacations and sick pay.

83.     The reason that plaintiff's job was terminated was because the defendants knew or assumed that he belonged to the Popular Democratic Party and/or was not a known member of the New Progressive Party.

84.     As a result of this termination, Defendants have deprived plaintiff, along with his wife and their conjugal partnership, of the income by which he sustained himself and his family; have subjected them to personal pain and suffering; and have punished him in the exercise of civil rights by terminating his employment because he is not a member of political party of the new Governor of Puerto Rico.

**Plaintiff Carmen M. Ocasio Hernández**

85.    Plaintiff Carmen Ocasio Hernández ("Ocasio") is of legal age, resident of Puerto Rico and a citizen of the United States of America.

86.    Plaintiff commenced working at the Governor's Mansion on July 2004 as Cleaning Employee ("Encargado de Limpieza") in the Maintenance Department of the Governor's mansion.

87.    Plaintiff's principal duties were to sweep, mop, dry and clean furniture, tables, paintings, lamps, rugs, mirrors and doors at the Executive Mansion; and set up and dismantle activities held at the Governor's Mansion, and Governor's Houses at Fajardo and Cayey.

88.    Plaintiff engaged in cleaning functions of a routine nature, that required manual competence and efficient performance, not political affiliation.

89.    Defendants terminated and dismissed plaintiff from her job without even conducting a single evaluation as to his job performance and efficiency.

90.    At no time prior to his dismissal did the Defendants discipline plaintiff or issue a reprimand related to the performance of his duties.

91.    Defendants terminated plaintiff's employment, without prior warning and without cause, by a letter of February 27, 2009, that informed him that he would be terminated on that same day.

92.    As of this date, defendants have not even paid the plaintiffs his accrued income, vacations and sick pay.

93.    The reason that plaintiff's job was terminated was because the defendants knew or assumed that he belonged to the Popular Democratic Party and/or was not a known member of the New Progressive Party.

23

94.     As a result of this termination, Defendants have deprived plaintiff of the income by which she sustained herself and her family; have subjected her to personal pain and suffering; and have punished her in the exercise of civil rights by terminating her employment because she is not a member of the political party of the new Governor of Puerto Rico.

**Plaintiff Ivan Rivera Canales**

95.     Plaintiff Ivan Rivera Canales ("Rivera") is of legal age, resident of Puerto Rico and a citizen of the United States of America. He is married to plaintiff Delia Villegas Francesquis, and together they form a Conjugal Partnership.

96.     Plaintiff Rivera commenced working at the Governor's Mansion on or about 1999 as Cleaning Employee ("Encargado de Limpieza") in the Maintenance Department of the Governor's Mansion.

97.     Plaintiff's principal duties were to sweep, mop, dry and clean furniture, tables, paintings, lamps, rugs, mirrors and doors at the Executive Mansion; and wash and clean the toilets, basins, doors, walls, windows, stairs and floors at the Governor's Mansion.

98.     Defendants terminated and dismissed plaintiff from his job without even conducting a single evaluation as to his job performance and efficiency.'

99.     At no time prior to his dismissal did the Defendants discipline plaintiff or issue a reprimand related to the performance of his duties.

100.    Defendants terminated plaintiff's employment, without prior warning and without cause, by a letter of February 27, 2009, that informed him that he would be terminated on that same day.

101.    As of this date, defendants have not even paid the plaintiff his accrued income, vacations and sick pay.

24

102.  The reason that plaintiff's job was terminated was because the defendants knew or assumed that he belonged to the Popular Democratic Party and/or was not a known member of the New Progressive Party.

103.  As a result of this termination, Defendants have deprived plaintiff, along with his wife and their conjugal partnership, of the income by which he sustained himself and his family; have subjected him to personal pain and suffering; and have punished him in the exercise of civil rights by terminating his employment because he is not a member of the political party of the new Governor of Puerto Rico.

### Plaintiff Diana D. Rodriguez Vicente

104. Plaintiff Diana D. Rodriguez Vicente ("Rodriguez") is of legal age, resident of Puerto Rico and a citizen of the United States of America.

105.  Plaintiff Rodriguez commenced working at the Governor's Mansion on or about September 1989 as Laundress and Ironer in the Laundry Department of the Governor's Mansion.

106.  Plaintiff's principal duties were to wash, dry and iron the clothes of the employees and residents of the Governor's Mansion; and wash and dry the bedding, towels, rugs, tablecloths, cloths, dust ruffles, napkins and place mats.

107.  Defendants terminated and dismissed plaintiff from her job without even conducting a single evaluation as to her job performance and efficiency.

108.  At no time prior to his dismissal did the Defendants discipline plaintiff or issue a reprimand related to the performance of her duties.

109.  Defendants terminated plaintiff's employment, without prior warning and without cause, by a letter of February 27, 2009, that informed her that she would be terminated

on that same day.

110.    As of this date, defendants have not even paid the plaintiffs her accrued income, vacations and sick pay.

111.    The reason that plaintiff's job was terminated was because the defendants knew or assumed that she belonged to the Popular Democratic Party and/or was not a known member of the New Progressive Party.

112.    As a result of this termination, Defendants have deprived plaintiff of the income by which she sustained herself and her family; have subjected her to personal pain and suffering; and have punished her in the exercise of civil rights by terminating her employment because she is not a member of the political party of the new Governor of Puerto Rico.

**Plaintiff Nydia Diaz Francisco**

113.    Plaintiff Nydia Diaz Francisco ("Diaz") is of legal age, resident of Puerto Rico and a citizen of the United States of America.

114.    Plaintiff Diaz commenced working at the Governor's Mansion on or about February 2001 as a Seamstress and Laundress in the Laundry Ironing Department of the Governor's Mansion.

115.    Plaintiff's principal duties were to wash, dry and iron the clothes of the employees and residents of the Governor's Mansion; look over the First Family clothes that come in and out of the Laundry; and sew the clothes of the First Family.

116.    Plaintiff engaged in cleaning and ironing functions of a routine nature that required manual competence and efficient performance, not political affiliation.

117.    Defendants terminated and dismissed plaintiff from her job without even conducting a single evaluation as to her job performance and efficiency.

26

118.    At no time prior to her dismissal did the Defendants discipline plaintiff or issue a reprimand related to the performance of her duties.

119.    Defendants terminated plaintiff's employment, without prior warning and without cause, by a letter of February 27, 2009, that informed her that she would be terminated on that same day.

120.    As of this date, defendants have not even paid the plaintiffs her accrued income, vacations and sick pay.

121.    The reason that plaintiff's job was terminated was because the defendants knew or assumed that she belonged to the Popular Democratic Party and/or was not a known member of the New Progressive Party.

122.    As a result of this termination, Defendants have deprived plaintiff of the income by which she sustained herself and her family; have subjected her to personal pain and suffering; and have punished her in the exercise of civil rights by terminating her employment because she is not a member of the political party of the new Governor of Puerto Rico.

**Plaintiff Felicita Baez Rodriguez**

123.    Plaintiff Felicita Rivera Baez ("Rivera") is of legal age, resident of Puerto Rico and a citizen of the United States of America. She is married to plaintiff Efrain Garcia Ocasio, and together they form a Conjugal Partnership.

124.    Plaintiff commenced working at the Governor's Mansion on or about February 2008 as an Iron lady and Laundress in the Laundry Ironing Department of the Governor's Mansion.

125.    Plaintiff's principal duties were to wash and iron the clothes of the Governor and of all other cooks, waiters, and maintenance employees at the Governor's mansion.

126.    Plaintiff engaged in cleaning and ironing functions of a routine nature that required manual competence and efficient performance, not political affiliation.

127.    Defendants terminated and dismissed plaintiff from her job without even conducting a single evaluation as to her job performance and efficiency.

128.    At no time prior to her dismissal did the Defendants discipline plaintiff or issue a reprimand related to the performance of her duties.

129.    Defendants terminated plaintiff's employment, without prior warning and without cause, by a letter of February 27, 2009, that informed her that she would be terminated on that same day.

130.    As of this date, defendants have not even paid the plaintiff her accrued income, vacations and sick pay.

131.    The reason that plaintiffs' job was terminated was because the defendants knew or assumed that she belonged to the Popular Democratic Party and/or was not a known member of the New Progressive Party.

132.    As a result of this termination, Defendants have deprived plaintiff, along with her husband and their conjugal partnership, of the income by which she sustained herself and her family; have subjected her to personal pain and suffering; and have punished her in the exercise of civil rights by terminating her employment because she is not a member of political party of the new Governor of Puerto Rico.

**Plaintiff William Burgos Castellanos**

133.    Plaintiff William Burgos Castellanos ("Burgos") is of legal age, resident of Puerto Rico and a citizen of the United States of America. He is married to plaintiff Enid Vargas Rodriguez, and together they form a Conjugal Partnership.

28

134. Plaintiff Burgos commenced working at the Governor's Mansion in Jajome, Cayey on or about February 2001 as a maintenance and conservation employee in the Maintenance Department ascribed to the Governor's Mansion.

135. Plaintiff's principal duties were to sweep, mop, dry, clean furniture, tables, paintings, lamps, mirror, rugs and doors; and clean the toilets, basins, doors, walls, windows, stairs, floors, sidewalks, terraces and grounds of the Governor's Mansion at Jajome.

136. Plaintiff engaged in cleaning functions of a routine nature, that required manual competence and efficient performance, not political affiliation.

137. Defendants terminated and dismissed plaintiff from his job without even conducting a single evaluation as to his job performance and efficiency.

138. At no time prior to his dismissal did the Defendants discipline plaintiff or issue a reprimand related to the performance of his duties.

139. Defendants terminated plaintiff's employment, without prior warning and without cause, by a letter of February 27, 2009, that informed him that he would be terminated on that same day.

140. As of this date, defendants have not even paid the plaintiff his accrued income, vacations and sick pay.

141. The reason that plaintiff's job was terminated was because the defendants knew or assumed that he belonged to the Popular Democratic Party and/or was not a known member of the New Progressive Party.

142. As a result of this termination, Defendants have deprived plaintiff, his wife and their conjugal partnership of the income by which he sustained himself and his family; have subjected them to personal pain and suffering; and have punished him in the exercise of civil

29

rights by terminating his employment because he is not a member of political party of the new Governor of Puerto Rico.

### Plaintiff Victor M. Camacho Pizarro

143.    Plaintiff Victor Camacho Pizarro ("Camacho") is of legal age, resident of Puerto Rico and a citizen of the United States of America.

144.    Plaintiff Camacho commenced working at the Governor's Mansion on March 1, 2004 as a Cleaning Employee ("Encargado de Limpieza") in the Maintenance Department of the Governor's mansion.

145.    Plaintiff's principal duties were to clean the kitchen at Fajardo, Cayey and Fortaleza, particularly the cooking utensils, furnaces, toaster, grill, tables, floors, stairs, walls, rugs, refrigerators, and trashcans.

146.    Plaintiff engaged in cleaning functions of a routine nature, that required manual competence and efficient performance, not political affiliation.

147.    Defendants terminated and dismissed plaintiff from his job without even conducting a single evaluation as to his job performance and efficiency.

148.    At no time prior to his dismissal did the Defendants discipline plaintiff or issue a reprimand related to the performance of his duties.

149.    Defendants terminated plaintiff's employment, without prior warning and without cause, by a letter of February 27, 2009, that informed him that he would be terminated on that same day.

150.    As of this date, defendants have not even paid the plaintiff his accrued income, vacations and sick pay.

151.    The reason that plaintiff's job was terminated was because the defendants

knew or assumed that he belonged to the Popular Democratic Party and/or was not a known member of the New Progressive Party.

152.     As a result of this termination, Defendants have deprived plaintiff of the income by which he sustained himself and his family; have subjected him to personal pain and suffering; and have punished him in the exercise of civil rights by terminating his employment because he is not a member of political party of the new Governor of Puerto Rico.

**FIRST CAUSE OF ACTION:**
**FIRST AMENDMENT AND DUE PROCESS**
**OF THE UNITED STATES CONSTITUTION**

153.     Plaintiffs repeat and incorporate all the allegations contained thus far as if set forth fully herein.

154.     The foregoing evidence that the Defendants, under the color of law of their respective positions, have willfully and/or with deliberate indifference violated the plaintiffs' rights under the First, Fifth and Fourteenth Amendments to the Constitution of the United States (freedom of speech and association; due process; and equal protection).

155.     As a result of the Defendants' unconstitutional and illegal conduct, each of the plaintiffs have been discriminatorily terminated in his or her employment, and caused irreparable and continuing harm, emotionally, economically and in his or her civil rights, in the amount of no less than $1,500,000.00. In addition, the plaintiffs pray for preliminary and permanent injunctive relief reinstating them in their employment and prohibiting Defendants from terminating their employment because of their political affiliations to the Popular Democratic Party.

156.     In addition, because the defendants have acted with deliberate indifference towards Plaintiffs constitutional rights, each plaintiff is entitled to punitive damages in the

amount of no less that $500,000.

## SECOND CAUSE OF ACTION:
## LAWS AND CONSTITUTION OF PUERTO RICO

157.    Plaintiffs repeat and incorporate all the allegations contained thus far as if set forth fully herein.

158.    The foregoing evidence that the Defendants, under the color of law of their respective positions, have willfully and/or with deliberate indifference violated the plaintiffs' rights action under the Constitution and laws of the Commonwealth of Puerto Rico, specifically Sections 1, 4, 6 and 7 of Article II of the Constitution of Puerto Rico; and the Public Service Personnel laws of Puerto Rico; Law No. 131 of May 13, 1943, P.R. Laws Ann., Tit. 1, § 13-19; and Articles 1802 and 1803 of the Civil Code, § 5141-5142 of Title 31. Muriel v. Suazo, 72 P.R.R. 348 (1951).

159.    As a result of the Defendants' unconstitutional and illegal conduct, each of the plaintiffs have been discriminatorily terminated in his or her employment, and caused irreparable and continuing harm, emotionally, economically and in his or her civil rights, in the amount of no less than $1,500,000.00. In addition, the plaintiffs pray for preliminary and permanent injunctive relief reinstating them in their employment and prohibiting Defendants from terminating their employment because of their political affiliations to the Popular Democratic Party.

## JURY DEMAND

160.    Trial by Jury is requested in all causes of action.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs respectfully pray that the Court:

1.    Find that the defendants have violated plaintiffs' rights under the first amendment, the due process and equal protection clauses of the United States Constitution; as well as under the laws and Constitution of Puerto Rico;

2.    Grant preliminary and permanent injunction reinstating the plaintiffs to their respective positions; and prohibiting, restraining and enjoining, the defendants, agents or anyone acting in concert with them or pursuant to their orders; or their successors in any representative capacity from violating any Constitutional rights of the plaintiffs;

3.    Award damages to each plaintiff in an amount no less than $1,500,000.00 for pain and suffering, lost back pay, and other damages suffered as a result of the defendants' unconstitutional conduct;

4.    Award punitive damages to each plaintiff in such in such amount as may be deemed appropriate;

5.    Award pre judgment interest;

6.    Award plaintiffs' attorneys' fees and costs pursuant to 42 U.S.C.§1988; and

7.    Award such other and further relief as may be deemed just and proper.

**RESPECTFULLY SUBMITTED.**

In Guaynabo, Puerto Rico, this June 12, 2009.

### NOTICE OF ELECTRONIC FILING

**WE HEREBY CERTIFY:** That on this date, the 12th of June, 2009,  I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which well send notification of such filing to all attorneys of record.

**COUNSEL FOR PLAINTIFFS:**

**LANDRÓN & VERA, LLP.**

*Attorneys at Law*
Centro Internacional de Mercadeo, Torre I
100 Carr. 165, Ste 203,
Guaynabo, PR 00968-8048
Tel. 787-774-5959
Tel. 787-774-8181

s/:Eileen Landron Guardiola
**EILEEN LANDRON GUARDIOLA**
**USDC-PR 203006**
Email:  elandton@landronvera.com

s/: Eduardo A. Vera Ramírez
**EDUARDO A. VERA RAMIREZ**
**USDC-PR 209713**
Email: evera@landronvera.com

S/: Carlos A. Del Valle Cruz
**Carlos A. Del Valle Cruz**
**USDC-PR-130106**
Email: cdelvallecruz@gmail.com

s:/ Luis A. Rodríguez Muñoz
**LUIS A. RODRIGUEZ MUNOZ**
**USDC-PR 214511**
Email: lrodriguez@landronvera.com

34